# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2912
_____

United States of America,

*Plaintiff - Appellee*,

v.

Romelle Darryl Smith,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 13, 2023
Filed: August 11, 2023
_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Romelle Smith pleaded guilty to unlawful possession of a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). The district court[1] sentenced Smith to 180 months'

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

imprisonment as an armed career criminal under 18 U.S.C. § 924(e). Smith appeals an order denying his motion to suppress evidence and challenges his sentence. We affirm.

I.

Police seized Smith in a case of mistaken identity. The principal question on appeal is whether the seizure was nonetheless reasonable, and whether evidence discovered in the course of the seizure was admissible in Smith's prosecution.

On July 16, 2020, a man was shot in the head in Minneapolis. Officer Jason Schmitt was assigned to investigate the case. An eyewitness identified the shooter as a man whose street name was "Bam." Officer Schmitt learned that "Bam" was an alias for Jamichael Ramey.

To find Ramey, Schmitt contacted a confidential informant on the day of the shooting. Schmitt had worked with this informant on at least twenty-five occasions, and the informant had provided accurate information about Ramey's possession of guns and drugs. The informant gave Schmitt a telephone number for Ramey, and told Schmitt that he had spoken to Ramey on this phone number earlier that day.

Based on this information, Schmitt obtained a search warrant for the cellular phone that allowed him to monitor the location of the phone through a global positioning system (GPS). On Saturday, July 18, the phone's service provider, T-Mobile, began to send Schmitt emails with the phone's GPS location every 15 minutes.

Schmitt developed a written operations plan for arresting Ramey. The plan included two photographs of Ramey, and described him as a black man who stood five-foot eleven-inches tall and weighed 172 pounds. Over the weekend of July 18-

-2-

19, Schmitt observed that the suspect phone repeatedly returned to an apartment building on 33rd Avenue South in Minneapolis.

On Monday, July 20, Schmitt and other officers conducted surveillance at the apartment building. Throughout the surveillance, Schmitt received e-mails from T-Mobile showing that the phone was at the building. Schmitt parked between 100 and 125 yards away from the building, and used binoculars to observe the front door. Although his view was partially obstructed by trees, cars, and light poles, he saw a black man of approximately Ramey's age whom he believed was Ramey.

Another officer, Lepinski, later assumed the surveillance, and parked a half to three-quarters block north of the apartment building on the opposite side of the street. Lepinski did not have a clear view of the front door, but he could see the sidewalk in front of the building. He used binoculars to watch this area, although his view was partially obscured by trees and light poles. Lepinski saw the same man whom Schmitt had observed. Based on the man's build, age, and complexion, Lepinski also believed the man was Ramey.

Officer Lepinski watched this man enter the passenger seat of a red GMC Envoy automobile that drove away from the apartment building. Surveillance officers followed. An officer soon saw the car parked at a gas station on 60th Street and Portland Avenue.

Meanwhile, Officer Schmitt continued to monitor the location of the suspected Ramey cell phone. The first e-mail that Schmitt received from T-Mobile after the red GMC Envoy left the apartment building showed that the phone was located at 60th Street and Portland Avenue—the address of the gas station where the car was parked. Based on this information, the officers concluded that the suspected Ramey phone was in the red GMC Envoy, and that the man they observed outside the apartment building was Ramey.

Officers stopped the car after it departed the gas station, and directed the man in the passenger seat to exit the vehicle. He identified himself as Romelle Smith, and acknowledged that he was carrying a firearm. Investigators later determined that Smith was a convicted felon.

Ramey, the suspect in the shooting, was not in the car with Smith. Officers later determined that the suspected Ramey cell phone that they had been tracking actually belonged to the driver of the red GMC Envoy. The driver was an associate of Ramey's.

A grand jury charged Smith with unlawful possession of a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). He moved to suppress evidence obtained as a result of the traffic stop. He argued that officers violated his rights under the Fourth Amendment by seizing him. The district court concluded the officers had reasonable suspicion to stop the vehicle and to seize Smith, because "they saw someone who they believed might be Ramey and corroborated their suspicion with the GPS location of the phone they believed to be Ramey's."

Smith pleaded guilty and reserved his right to appeal the denial of his motion to suppress. Fed. R. Crim. P. 11(a)(2). At sentencing, the district court determined that Smith was an armed career criminal under 18 U.S.C. § 924(e) because he had sustained three previous convictions for a violent felony. The court rejected Smith's contention that neither his 2008 Illinois conviction for vehicular hijacking nor his 2011 Illinois conviction for aggravated vehicular hijacking qualified. The court then sentenced Smith to the statutory minimum term of 180 months' imprisonment.

II.

A.

A law enforcement officer may conduct an investigative stop of a vehicle when he has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Smith does not dispute that the officers had probable cause to arrest Ramey, but argues that they lacked reasonable suspicion to believe that Ramey was in the red GMC Envoy or to stop the vehicle. In evaluating this contention, we bear in mind that "[t]o be reasonable is not to be perfect," so officers do not violate the Fourth Amendment if they reasonably, but mistakenly, believe that there are sufficient grounds to conduct an investigative stop. *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014).

We conclude that the totality of the circumstances provided the officers with a reasonable, articulable basis to believe that Ramey was in the car that they stopped. Officers had reasonable suspicion that Ramey used a particular cellular telephone. Officer Schmitt received the telephone number from a known informant. The informant had proved reliable by providing accurate information about Ramey's possession of guns and drugs in the past. The informant reported recently speaking with Ramey at the specified phone number. Officers were armed with a judicial warrant based on a finding of probable cause that Ramey used the target phone number.

GPS location data showed that the phone was located at the apartment building on 33rd Avenue South on July 20. Officer Schmitt and Officer Lepinski each observed a man who appeared from a distance to match Ramey's description at the apartment building—a black man in his twenties with a medium build. After officers observed this man drive away from the building, they determined that his location

continued to match the location of the suspect cell phone. This location information further suggested that the man was Ramey.

Smith asserts that aside from age and race, the physical appearances of Ramey and Smith were not particularly close: Ramey was four inches taller and nearly 40 pounds heavier than Smith. But both officers observed Smith from a significant distance through binoculars with a view that was partially obscured. From these vantage points, and without reference points against which to measure height or weight, a reasonable officer could have perceived a "medium build," and was not required to exclude the possibility that the man was Ramey. When officers then determined that the man traveled the same route as the telephone associated with Ramey, a reasonable officer could have believed, mistakenly, that the man under surveillance was Ramey. Accordingly, the stop did not violate Smith's rights under the Fourth Amendment, and the district court properly denied the motion to suppress.

B.

With respect to his sentence, Smith contends that he was not an armed career criminal under 18 U.S.C. § 924(e), because he had not sustained three previous convictions for a violent felony. A "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). An offender who qualifies as an armed career criminal is subject to a statutory minimum sentence of fifteen years' imprisonment.

Smith admits to one qualifying conviction, but contends that his 2008 Illinois conviction for vehicular hijacking and his 2011 Illinois conviction for aggravated vehicular hijacking were not convictions for a violent felony. He argues that a person hypothetically could commit vehicular hijacking without using or threatening to use force against another person.

This contention is foreclosed by the reasoning of *United States v. Pulley*, No. 22-2858, 2023 WL 4876447, at \*2 (8th Cir. Aug. 1, 2023). There, this court held that the vehicular hijacking statute under which Smith was convicted qualifies as a crime of violence under the sentencing guidelines, because it required the use or threatened use of physical force against another. *Id*. at \*2-3. For the same reason, the offense qualifies as a violent felony under § 924(e)(2)(B)(i). Smith's aggravated offense required the same elements as vehicular hijacking plus an aggravating circumstance, 720 Ill. Comp. Stat. 5/18-4 (amended 2013), so it also qualifies. The district court correctly concluded that Smith previously had been convicted of three violent felonies, and properly sentenced him accordingly.

\*       \*       \*

The judgment of the district court is affirmed.

_____